```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ROSE MARIE KLIMBACH,

                         Plaintiff,            03-CV-6111
              v.                               **DECISION**
                                               **and ORDER**
SPHERION CORP. AND AETNA HEALTH INC.
(FORMERLY U.S. HEALTHCARE, INC.),

                         Defendants.
_____
```

### **INTRODUCTION**

Plaintiff, Rose Marie Klimbach ("plaintiff") brought this action pursuant to the Employee Retirement Income Security Act ("ERISA"), alleging that defendants Spherion Corporation ("Spherion") and Aetna Life Insurance Company ("Aetna") improperly calculated her husband's life insurance benefits.[1] For determination is the plaintiff's pending motion for an award of attorneys' fees pursuant to the provisions of ERISA, 29 U.S.C. § 1132(g)(1). By Decision and Order dated August 19, 2005, this Court granted summary judgment and dismissed all of plaintiff's five counts in favor of the defendants. Specifically, this Court dismissed Count I, plaintiff's ERISA § 502(a)(1)(B) claim for failure to pay benefit. Subsequently, plaintiff appealed this Court's grant of summary judgment on Counts I and V to the Second Circuit Court of Appeals.

By Summary Order the Second Circuit reversed this Court's grant of summary judgment to Spherion and decided in favor of

---

[1]Aetna Life Insurance Company was improperly sued herein as Aetna Health, Inc. (formerly U.S. Healthcare, Inc.).

plaintiff on her ERISA § 502(a)(1)(B) claim, finding that Spherion's interpretation of the Plan was arbitrary and capricious. Pursuant to the Second Circuit's Summary Order, this case was remanded to the District Court for determination of plaintiff's claims for attorneys' fees and award of pre-judgment interest.

Plaintiff now moves for an award of $119,531.50 in attorneys' fees and $3,178.05 in costs.[2] Spherion argues that plaintiff is not entitled to attorneys' fees. Moreover, even if plaintiff is entitled to an award of attorneys' fees, the fees should be reduced and that $20,271.86 more accurately reflects an appropriate fee award. Finally, Spherion contends that plaintiff is not entitled to pre-judgment interest. For the reasons discussed below, I find that plaintiff is entitled to an award of attorneys fees and costs and that $101,909.60 in attorneys' fees and $3,178.05 in costs is a reasonable award. I also find that plaintiff is entitled to pre-judgment interest in the amount of $14,798.58. Thus, the total award for attorneys' fees, costs and pre-judgment interest is $119,886.23.

## BACKGROUND

Due to the extensive activity in this case and the prior decisions issued by this Court and the Second Circuit, it is presumed that the parties are familiar with the procedural and factual history of this case.

---

[2] Spherion does not oppose plaintiff's request for costs in the sum of $ 3,178.05.

Plaintiffs initially commenced this action on March 13, 2003 against defendants pursuant to ERISA. Following extensive pretrial discovery, including depositions and numerous document requests, plaintiff moved for summary judgment against defendants. Both defendants cross-moved for summary judgment. On August 19, 2005, this Court denied plaintiff's summary judgment motion and granted summary judgment in favor of the defendants, dismissing plaintiff's complaint. Plaintiff appealed the judgment of this Court to the Second Circuit on September 16, 2005. The Second Circuit subsequently reversed this Court's ruling by Summary Order dated April 3, 2006.

Plaintiff's counsel argue that they are entitled to an award of attorneys' fees under 29 U.S.C. § 1132(g)(1) because they attained the relief plaintiff sought, which required defendants, specifically Spherion to honor the commitment to the plaintiff of the payment of benefits in the amount of $132,000. Spherion argues that plaintiff is not entitled to an award of attorneys' fees. Alternatively, Spherion contends that even if plaintiff is entitled to attorneys' fees, this Court should reduce plaintiff's requested fees for reasons stated in its response papers. Further, Spherion argues that plaintiff is not entitled to pre-judgment interest.

## DISCUSSION

**I.   Award of Attorneys' Fees and Costs**

ERISA provides for an award of attorneys' fees in the court's discretion. 29 U.S.C. § 1132(g)(1). The statute provides that "[i]n

any action under this subchapter...by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of the action to either party." Id. Although the court has broad discretion in awarding fees and costs, that discretion is guided by five factors: (1) the degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy an award of attorney's fees; (3) whether an award of attorneys' fees would deter other persons from acting similarly under like circumstances; (4) the relative merits of the parties' positions; and (5) whether the action conferred a common benefit on plan members. Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987). Each of these factors must be weighed, but it is not necessary for a party to prevail on each in order for an award to be granted. See Ford v. NY Central Teamsters Pension Fund, 506 F.Supp. 180 (W.D.N.Y. 1980).

Plaintiff contends that she has met all five factors. Spherion asserts that, except for the ability to satisfy the award factor, the four remaining factors, namely bad faith, deterrence, relative merits of the parties positions and whether the action conferred a common benefit, weigh against a full award for attorneys' fees and costs[3] and as such this Court should deny the award of attorneys fees or alternatively award an amount that is substantially less than that requested by plaintiff.

---

[3]Because there is no dispute concerning Spherion's ability to satisfy the attorneys' fees award, this Court need not address this issue at this time.

### A. Degree of Culpability or Bad Faith

Spherion argues that it did not act with bad faith in handling plaintiff's claim because it denied Mrs. Klimbach's claim only after careful consideration of the claim as further evidence by this Court's grant of summary judgment in Spherion's favor. Spherion further contends that even though the Second Circuit ultimately disagreed with this Court's decision and Spherion's interpretation of the Plan, at no point did it find that Spherion acted in bad faith. While there was no specific finding of bad faith on the part of Spherion in the Second Circuit's Summary Order, the transcript from the oral argument illustrates that the Second Circuit believed, and its decision in plaintiff's favor shows that Spherion acted in bad faith in assessing plaintiff's claim. See <u>Algie v. RCA Global Communications, Inc., et al.</u>, 891 F.Supp. 875 (S.D.N.Y. 1994), aff'd, 60 F.3d 956 (2d Cir.1995) (Court held that bad faith conduct normally involves "something more than simple negligence ... It implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose.")

Spherion resisted plaintiff every step of the way in her attempt to obtain Mr. Klimbach's life insurance benefits. Initially, Spherion informally denied plaintiff's claim for re-evaluation of Mr. Klimbach's benefits and then formally denying her administrative appeal for reconsideration. Thereafter, plaintiff was forced to engage counsel and file a complaint in federal court and represent her all the way to the Second Circuit. Moreover,

Spherion's culpability and bad faith is further supported by its refusal to consider settlement of this action before plaintiff's commencement of this action.[4] Further, the Second Circuit found that plaintiff's understanding of the Plan was the only reasonable interpretation and Spherion's interpretation was arbitrary and capricious. Thus, the first factor weighs in plaintiff's favor.

### B. The Deterrent Effect

This factor also weighs in favor of the plaintiff. Spherion argues that a fee award will not deter those similarly situated given that Spherion modified its Plan after receiving plaintiff's claim and because it thoroughly considered plaintiff's claim when it was initially made at the administrative appeals level, thereby satisfying its fiduciary obligations. Contrary to Spherion's contentions, an award of fees may deter defendants that are similarly situated to Spherion and other plan fiduciaries from interpreting their plans in such a way as to avoid the plan's true intent and directive because it is not in their economic interest to do so. See Lampert v. Metro. Life Ins. Co., 2004 WL *2 1395040 (S.D.N.Y. 2004) (Court held that the "award of fees may encourage Defendant and other similarly situated parties to be more responsive to accepting meritorious positions during the administrative review process, or at least prior to the filing of

---

[4]Spherion argues that it was plaintiff that refused to consider settlement discussions during the mandated Pre-Argument Conference before the Second Circuit Court Attorney on November 3, 2005. That mandated conference was over two years after the action was commenced. Notably, Spherion does not dispute plaintiff's claim that throughout the litigation and prior to the appeal, Spherion did not entertain any settlement discussions in this case.

a Complaint, thus preventing ... expense on the part of the deserving claimants and avoiding needless litigation").

### C. The Relative Merits of the Parties' Positions

Spherion contends that an award of attorneys' fees is inappropriate because there is no meaningful disparity between the relative merits of the plaintiff and Spherion's position. However, the Second Circuit has made its decision and determined that Spherion had improperly denied plaintiff the benefit payments she sought and that plaintiff is entitled to $132,000 of the benefit payment. Thus, plaintiff has prevailed in this case and this third factor weighs in plaintiff's favor.

### D. Whether The Action Conferred a Common Benefit

I find that this factor also weighs in favor of the plaintiff. Spherion alleges that this is a discrete individual claim for life insurance benefits and not a class-wide case. Contrary to Spherion's argument, the interpretation of the Plan documents can be applied equally to any "hourly associate" in Mr. Klimbach's position covered under the Plan. Thus, the Second Circuit's decision that Spherion's interpretation of the Plan was arbitrary and capricious as it relates to hourly associates demonstrates that this action conferred a common benefit to plan members.

## III. Reasonableness of Fees and Costs

Attorneys' fees are awarded based upon a determination of the number of hours reasonably expended multiplied by a reasonable

hourly rate. This calculation is commonly known as the "lodestar." See Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"); See also Anderson v. Rochester-Genesee Reg. Transp. Auth., 388 F.Supp.2d 159, 163 (W.D.N.Y. 2005). The court must also consider the "critical factor" of the "results obtained" and adjust the lodestar upward or downward accordingly. See Id; Blum v. Stenson, 465 U.S. 886, 895, n.11 (1984) (court must "exclude from ... initial fee calculation hours that were not `reasonably expended,'" and should adjust the "lodestar" if court determines that the requested fee is not reasonable).

Moreover, a district court's evaluation of a fee petition is afforded ample discretion, because as the Second Circuit has noted, "the district court has the best vantage point from which to assess the skill of the attorneys and the amount of time reasonably needed to litigate a case." Chambless, 885 F.2d at 1057-58.

### A. Number of Hours Expended

In determining whether the number of hours expended was reasonable, the court must exclude any hours that were "excessive, redundant, or otherwise unnecessary." See Hensley, 461 U.S. at 434; New York Ass'n for Retarded Children v, Carey, 711 F.2d 1136, 1146 (2d Cir. 1983). In deciding whether time was "reasonably expended," the court must ask whether the attorney exercised "billing judgment." See Anderson, 388 F.Supp.2d at 163. Further, the court

should also exclude any hours dedicated to severable, unsuccessful claims. Quaratino v. Tiffany & Co., 129 F.3d 702 (2d Cir. 1997). Attorneys' fees may be awarded, however, for unsuccessful claims if they are "`inextricably intertwined' and 'involve a common core of facts'" Id. at 705, quoting Reed v. A.W. Lawrence & Co. Inc., 95 F.3d 1170, 1183 (2d Cir. 1996).

Spherion claims that if this Court were to award attorneys' fees, plaintiff's fee request is excessive and unreasonable, and should be reduced by the Court. Spherion points to several deficiencies in plaintiff's request: (1) plaintiff fee application is inflated based on excessive billing rates, generic and "block" billing, performance of tasks by inappropriate staff, and billing for non-compensable hours such as learning the basics of ERISA and transitioning file from one attorney to another; (2) half of the attorneys' fees sought were incurred in connection with claims made against Aetna and which must be removed from her application; (3) plaintiff succeeded on only one of her five claims against Spherion. Each of these claims is examined below.

  **1. Excessiveness of Plaintiff's Fee Application**

    **(A) Rate of Compensation**

Calculation of the lodestar requires the court to determine the "prevailing market rates" for the type of services rendered by determining the "fees that would be charged for similar work by attorneys of like skill in the area." Orchano v. Advanced Recovery, Inc., 107 F.3d 94 (2d Cir. 1997). With respect to the hourly rate, the burden is on the fee applicant to produce satisfactory evidence. See Blum, 465 U.S. at 895; Seitzman v. Sun Life Assurance

Co. of Canada, Inc., 311 F.3d 477, 487 (2d Cir. 2002). Moreover, a reasonable hourly rate is a rate "in line with ... prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." See Blum, 465 U.S. at 895 n.11; Chambless, 885 F.2d at 1058-59.

Plaintiff's request an hourly rate of $275 and $260 for partners William Bauer and Gordon S. Dickens respectively and $210 and $200 for associates Christian Valentino and Lorisa D. LaRocca respectively. Plaintiffs also request an hourly rate of $125 for the paralegal work performed by the Woods Oviatt law firm. Both parties have cited cases supporting their positions regarding which hourly rate is reasonable in this District. Clearly, however, a district court may use its knowledge of the relevant market when determining the reasonable hourly rate. See Assoc. for Retarded Citizens of Connecticut, Inc. v. Thorne, 68 F.3d 547, 554 (2d Cir. 1995); Miele v. NY State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987) (Second Circuit held that "a judge may rely in part on [his] own knowledge of private firm hourly rates in the community").

While the rates requested do not appear exorbitant, I believe that a minimal reduction is warranted, and accordingly will award fees to Attorneys Bauer and Dickens (and other partners) at the hourly rate of $250 and fees to Attorneys Valentino and LaRocca (and other associates) at the hourly rate of $180. The hourly rate for paralegal time is reduced to $100 an hour. Further, these rates should be applied to all the work performed by counsel beginning in August 2002. See Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir.

1998) (Second Circuit held that in awarding fees, courts should use "current rather than historic hourly rates").

### (B)   Vague Billing Entries and Blocked Time Entries

It is well settled in this Circuit that in evaluating the reasonableness of a sizeable fee application, a court need not examine each and every billing entry. <u>Carey</u>, 711 F.2d at 1146. The court may, instead, reduce a fee request on a percentage basis where a reduction is warranted. Spherion argues that the Woods Oviatt bill is full of vague time entries and "block billing" making it impossible to determine how much time was spent on proper attorney tasks and other details necessary to evaluate the reasonableness of its requested fees. Spherion contends that an across-the-board reduction of 15-20% is appropriate.

Spherion correctly points out that a number of plaintiff's counsel's billing entries are vague. This Court spent a considerable amount of time reviewing the billing affidavit and exhibits submitted by counsel in order to evaluate the services performed. For instance, there were numerous block entries between October 22 and 28, 2004 simply indicating the broad task of "work on motion for summary judgment" and were billed without further explanation. Under these circumstances, it is impossible to determine whether those hours were duplicative or were justifiably billed. These trends were apparent in the attorney's billing exhibit and an across-the-board 10% reduction for these specific entries is therefore justified. <u>See</u> <u>Comm'n Express Nat'l. Inc. v. Rikhy</u>, 2005 WL 1397889, at *5 (E.D.N.Y. 2006) (reducing attorneys'

fees by 10% because "attorneys here engaged in some block billing").

### (C)   The Delegation Issue

Spherion argues that this Court should reduce the total hours claimed by Attorneys Dickens because of his failure to delegate proper work to associates and paralegals. I agree with Spherion that plaintiff's counsel did not delegate their work appropriately by utilizing associates and paralegals when necessary. The tasks performed by a partner that should have been performed by either an associate or paralegal will be charged at the proper associate ($180) and/or paralegal ($95) rate. In addition, any tasks performed by an associate that could have been performed by a paralegal will be charged at the hourly rate of $95. Moreover, any time spent for clerical activity will be billed at the clerical rate of $50 per hour. See Daiwa Special Asset Corp. v. Desnick, 2002 WL 31767817 (S.D.N.Y. 2002).

Further, with respect to compensation for travel time, Spherion contends, and plaintiff does not appear to disagree, that there should be a 50% reduction to the travel time of the Woods Oviatt attorneys.  Regarding travel time fees, the case law is clear that courts regularly reduce attorneys' fees by fifty percent for travel time. See Gonzalez v. Bratton, 147 F.Supp. 2d 180, 213 (S.D.N.Y. 2001). Accordingly, plaintiff's fee application for travel time billed shall be reduced by 50%.

### (D)   Transitioning the File

Spherion contends that plaintiff should not be allowed to recover attorneys' fees associated with transferring plaintiff's file from one associate to another. Specifically, Spherion claims that it should not be required to pay for time spent by counsel

getting up to speed on the factual background of the case between October 11 through 21, 2004.[5] See Ware v. ABB Air Preheater, Inc., 1995 WL 574464, at *8 (W.D.N.Y. 1995) (reducing fee award for hours new attorney spent "getting up to speed" on case). Spherion next argues that plaintiff should not be compensated for time spent by an attorney learning the basics of ERISA. In support for their contention, Spherion points to various time entries where plaintiff's counsel is educating himself/herself with ERISA. Contrary to Spherion's allegations, such time entries do not reflect that claim. Plaintiff's research was necessary to respond to Spherion's affirmative defenses as well as preparation for the summary judgment motion and subsequent appellate briefs. Thus, I find that plaintiff's counsel should be compensated for this time.

### 2.   Attorneys' Fees Relating to Claims Against Aetna

Spherion claims that plaintiff is not entitled to recover fees from Spherion for fees incurred in prosecuting this case against co-defendant Aetna and as such plaintiff's attorneys' fees request should be reduced across-the-board by 50%. In considering this claim, it is important to note that plaintiff pursued litigation against Aetna due to Spherion's allegations that Aetna had discretion in administering the Plan and was ultimately responsible for Mr. Klimbach's benefit determination. In addition, most of the time spent by plaintiff's counsel in this litigation has been directed toward Spherion since Aetna has chosen a minimalist approach concerning its participation in this lawsuit. Indeed, Aetna chose not to participate in the depositions held in both New

---

[5] See billing entries dated 10/11/04, 10/12/04, 10/20/04 and 10/21/04.

York and Florida. Therefore, I determine that Spherion's argument is without merit, and I will not reduce plaintiff's attorneys' fees by 50%.

### 3. Entitlement to Fees Based on Success of Claims

Essentially, Spherion argues that plaintiff's fee application should be reduced because she succeeded on only one out of her five claims.[6] Where a plaintiff has won substantial relief and all plaintiff's claims for relief involve "'a common core of facts' or were 'based on related legal theories,' so that [m]uch of counsel's time was devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," the lodestar should not be adjusted downward to account for the related unsuccessful claims. Sternberg v. Fletcher, et al., 143 F.3d 748, 762 (2d Cir. 1998) (quoting Hensley, 461 U.S. at 434-5).

In the present case, the fee award should not be reduced simply because plaintiff did not prevail on all the counts of the complaint. Plaintiff in good faith raised alternative legal grounds to obtain the result she desired. Plaintiff's main goal was that she receive the $132,000 benefit she alleged she was entitled to under the Plan. Plaintiff's counsel achieved this result for her when the Second Circuit ultimately ruled that plaintiff was entitled to this sum based upon the ERISA cause of action. As a result of the Second Circuit's decision, plaintiff was 100% successful in her claim against defendants. Accordingly, this Court

---

[6] Plaintiff succeeded on her ERISA section 502(a)(1)(B) claim for benefits. Spherion claims plaintiff failed on her claims for unlawful modification of the plan, fraud, breach of fiduciary duty and equitable estoppel. Plaintiff contends that the Second Circuit did not deny plaintiff's equitable estoppel claim but indicated that it was unnecessary to decide those claims since it found in favor of plaintiff under the ERISA section 1132 claim.

finds the requested deductions by Spherion to be inappropriate.

**IV.  Pre-Judgment Interest**

Whether to award pre-judgment interest in a suit to recover benefits under ERISA is ordinarily left to the discretion of the district court. See Jones v. UNUM Life Ins. Co. of America, 223 F.3d 130, 139 (2d Cir. 2000). In exercising such discretion, the court should consider:(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court. See First Jersey Sec., Inc., 101 F.3d 1450, 1476 (2d Cir. 1996), cert. denied 522 U.S. 812 (1997). Weighing all these factors here, I find that an award of pre-judgment interest is warranted.

Plaintiff commenced this lawsuit in August 2002 and only received full payment of all outstanding amounts of her husband's life benefits after April 2006. Considering the remedial purpose of ERISA, the balance of the equities, and the need to make plaintiff whole, I find that plaintiff is entitled to pre-judgment interest. However, plaintiff is not entitled to an award of pre-judgment interest for the full amount of $132,000 because plaintiff previously received a check in the amount of $31,000 in satisfaction of her claim in April 2002. As a result, plaintiff would not be entitled to any pre-judgment on that amount, and would be limited to interest on the unpaid benefit of $101,000.

A cause of action under ERISA and prejudgment interest on a plan participant's claim both accrue when a fiduciary denies a participant benefits. See Larsen v. NMU Pension Trust, 902 F.2d

1069, 1073 (2d Cir.1990); Algie, 891 F.Supp. at 899. Setting the accrual date in this manner not only advances the general purposes of prejudgment interest, but also serves ERISA's remedial objectives by making a participant whole for the period during which the fiduciary withholds money legally due. See Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 286 (2d Cir.1992). Here, Spherion denied plaintiff's benefit appeal on October 9, 2002 and thus, plaintiff's award of pre-judgment interest will be calculated from October 9, 2002 and only upon the unpaid portion of $101,000.

The next question is to determine the appropriate rate of interest. There is no federal statute that controls the rate of pre-judgment interest. While some courts have awarded pre-judgment interest at the post judgment interest rate provided by § 1961,[7] the Second Circuit has stated that "[t]he suitability of that post judgment rate for an award of pre-judgment interest will depend on the circumstances of the individual case, and the court need not limit the award of pre-judgment interest to the rate at which the injured party would have lent the money to the government." Jones, 223 F.3d at 139. Here, plaintiff has not requested the Court to adopt any particular interest rate. Spherion, on the other hand, argues that this Court should apply the interest rate set forth under § 1961(a). Based on the above circumstance, I see no basis for applying a rate other than the post judgment interest rate provided in § 1961.

---

[7] See Real Estate Investors Ass'n v. City of Jamestown, 2005 WL 602377 (W.D.N.Y. 2005); Tuszynski v. Innovative Services, Inc., 2005 WL 221234 (W.D.N.Y. 2005).

Section 1961 provides that provides that post judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." A review of the weekly averages on the Federal Reserve's website (http://www.federalreserve.gov/releases/H15/data/Business_day/H15_TCMNOM_Y1.txt) reveals that in the period since Spherion denied plaintiff's claim, those rates have fluctuated from over 5% to close to 1.5%.[8] In exercising the Court's discretion, I will award plaintiff pre-judgment interest at the rate of 3.5%, which is approximately the average of the rate over the period in question.

## CONCLUSION

Plaintiff having moved for an award of attorneys' fees, it is hereby ORDERED that plaintiff's motion is granted as follows:

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Partners<br> - Gordon S. Dickens<br> - William G. Bauer<br> - Robert W. Kessler<br> - Rene H. Reixach | $250.00 | 162.1[9] | $40,525.00 |
| Associates<br> - Christian Valentino<br> - Lorisa D. LaRocca<br> - Stephanie T. Seiffert | $180.00 | 287.5[10] | $51,750.00 |

---

[8]On October 9, 2002, the rate was 1.55% and on December 13, 2006, the rate was 4.91%.

[9]Represents the number of hours where no reductions in time where made by this Court for the partner billing entries.

[10]Represents the number of hours where no reductions in time where made by this Court for the associate billing entries.

- Page 17-

| | | | |
|---|---|---|---|
| Paralegals<br>- Cindy J. West<br>- Mary A. Mastin<br>- Bonnie S. Brooks | $100.00 | 15.3 | $1,530.00 |
| Summer Law Clerk<br>- Elizabeth F. Colombo | $75.00 | 3.4 | $255.00 |
| | | **SUB-TOTAL** | **$94,060.00** |
| Lorisa D. LaRocca | $180.00 | 36.3[11] | $6,534.00 minus 10% reduction = **$5,880.60** |
| George S. Dickens | $180.00[12] | 2.3 | **$414.00** |
| George S. Dickens<br>Christian Valentino | $100.00[13] | 1.9 | **$190.00** |
| Partners, Associates and Paralegals | $50.00[14] | 2.3 | **$115.00** |
| George S. Dickens (Travel time reduced by 50% for 03/14/06) | $250.00 | 10 | $2,500 reduced by 50% = **$1,125.00** |
| | | **TOTAL** | **$101,909.60** |

I find that $101,909.60 is a reasonable attorneys' fee award. Plaintiff is also entitled to recover her costs of $3,178.05. In addition, I find that plaintiff is entitled to prejudgment interest at an annual rate of 3.5%, calculated from October 9, 2002. Both

---

[11] Represents the number of hours where this Court determined the billing rate for the blocked entries should be reduced by 10%. The dates for these entries are as follows: 10/22/04, 10/25/04, 10/26/04, 10/27/04 and 10/28/04.

[12] Represents the number of hours where this Court determined the billing rate should be reduced to an associate rate for work performed by a partner. The dates for these entries are as follows: 03/24/04, 03/31/04; 07/8/04; 09/8/04; and 09/15/05.

[13] Represents the number of hours where this Court determined the billing rate should be reduced to paralegal rate. The dates for these entries are as follows: 11/24/03, 11/26/03 and 03/1/04, 03/4/04.

[14] Represents the number of hours where this Court determined the work performed should be billed at the clerical rate. The dates for these entries are as follows: 07/25/03; 11/10/03; 12/2/03; 01/27/04, 01/28/04; and 08/31/05.

the attorneys' fee award and costs, totaling $105,087.65, together with the prejudgment interest in the amount of $14,798.58 shall be paid by Spherion to the plaintiff in compliance with this Decision and Order and for the reasons stated herein. Thus, the total award for attorneys' fees, costs and pre-judgment interest is $119,886.23. Further, I vacate the judgment for costs in the amount of $2,305.35 in favor of Spherion against plaintiff when summary judgment was initially granted in Spherion's favor on August 19, 2005.

ALL OF THE ABOVE IS SO ORDERED.

                                              s/Michael A. Telesca
                                                MICHAEL A. TELESCA
                                      United States District Judge

Dated:    Rochester, New York
             December 15, 2006